■ CONGREGATION GATES OF PRAYER, Respondent, v BOARD OF APPEALS OF THE VILLAGE OF LAWRENCE et al., Appellants. LAWRENCE HOMEOWNERS ASSOCIATION, Intervenor-Appellant.—In a proceeding pursuant to CPLR

article 78 to annul a determination of the Board of Appeals of the Village of Lawrence, dated March 18, 1974, the appeals are from a judgment of the Supreme Court, Nassau County, dated September 23, 1974, which granted the application and directed that a building permit be issued to petitioner for construction of a synagogue. Judgment reversed, on the law, without costs, determination confirmed and proceeding dismissed on the merits. Petitioner is a religious corporation which applied to the Building Inspector of the Village of Lawrence for a building permit to construct a synagogue on certain land owned by petitioner within the village. At the time the application was submitted, the Village Building Zone Ordinance provided in relevant part that in the case of places of worship "in which seats are provided for five or more persons, there shall be at least one [off-street] parking space for each five seats which are so provided" (§ 211.0516, subd [b] [bracketed matter supplied]). The Village Building Code created the office of Building Inspector and endowed him with broad discretion to pass on applications for permits and with the power to adopt regulations to be followed in a particular case. In considering each application, the inspector was empowered to consider "the standards of federal or state bureaus, national technical organizations or fire underwriters" as a guide in making his determination (§ 231.2, subd [e], par 1). The Building Inspector denied petitioner's application upon the ground, *inter alia,* that although petitioner's plans claimed 266 seats, the actual seating capacity was 329 in the pews provided, and there was vacant space sufficient for at least 70 more seats in the sanctuary, for a total seating capacity of 399. He further determined that the seating capacity of the building without regard to petitioner's seating plan was 520. Accordingly, he decided that the 67 spaces provided in petitioner's parking plan were insufficient in number based upon a ratio of one space per every five spaces of seating capacity. As an additional ground for denying the permit, he stated that three exits from the sanctuary were required under the New York State Building Construction Code, rather than the two exits shown on the plans. Petitioner appealed to the Village Board of Appeals, contending principally that the Building Zone Ordinance merely required one parking space for every five seats provided in petitioner's plans, without regard to the actual seating capacity of the building and that the 59 parking spaces shown on its amended parking plan were adequate in number for the 273 seats it claimed were in the building. The Board of Appeals rejected this contention, confirmed the determination of the Building Inspector and denied variances of the applicable sections which petitioner had requested as alternative relief. Petitioner then brought the instant proceeding. Special Term annulled the determination of the board, holding that the interpretation of subdivision (b) of section 211.0516 of the Building Zone Ordinance to require one off-street parking space for every five seats of seating capacity of the building, rather than for the number of seats claimed in the plans, was arbitrary, capricious and unreasonable. Special Term further held that it was improper (1) to deny a building permit based upon the failure to comply with the provisions of the State Building Code, which code had not been properly adopted by the village as provided in section 374-a of the Executive Law, and (2) to deny a permit based upon reference to and use of other private standards not specifically set forth in the ordinances of the village. It is undisputed that after the entry of the judgment under review, the village adopted the State Building Construction Code in full compliance with the provisions of the Executive Law. Under well established principles, this court must apply the law as it exists as of the time of our decision *(Matter of Lunden v Petito,* 30 AD2d 820, and cases

there cited). The State Building Construction Code requires three exits from an assembly hall with a seating capacity of more than 300 but less than 601 persons (9 NYCRR 821.8, Table VIII) and further mandates that such exits must provide a safe continuous passage from the interior of the structure to the street or other legal open spaces at grade level connected with the street. The required exits may not lead through a garage (9 NYCRR 821.1 [b], [c]). The Board of Appeals found, and we agree, that the sanctuary of the proposed synagogue has a seating capacity of over 300 persons and that only one of the exits provided in petitioner's plans met the requirements of the State Building Construction Code. For this reason alone, the permit was properly denied. Since the entry of the judgment appealed from, the village has also amended subdivision (b) of section 211.0516 of its Building Zone Ordinance so as to require in substance that houses of worship must provide "at least one parking space for each five persons for whom the building has seating capacity" rather than one parking space for every "five seats * * * provided" as the ordinance formerly read. On this appeal petitioner has raised certain questions as to the due enactment of this amendment and as to the constitutionality of such a test for determining the number of parking spaces which must be provided. We find it unnecessary to reach these questions, since in our opinion the Building Inspector and the Board of Appeals were correct in concluding that petitioner's parking plans did not meet either the old test of one space for every five seats provided or the new test of one space for every five persons for whom the building has seating capacity. It was entirely proper for the Building Inspector to refer to standard reference works in exercising the broad discretion granted to him under the Building Zone Ordinance. Portions of these standard works were introduced into evidence before the Board of Appeals and they clearly indicated that the number of persons who may comfortably be seated on pews should be computed on the basis of between 18 and 20 inches per person rather than the 24 inches per person used by petitioner in determining that its pews would accommodate only 266 persons. Petitioner's computation of the capacity of its pews was not binding on the Building Inspector and, in light of these standard reference works, it cannot be said that his determination that the pews would accommodate 329 persons was arbitrary or capricious. The amended parking plan showing only 59 spaces was therefore insufficient. We conclude with the observation that petitioner has failed to show any evidence that appellants have attempted to unlawfully discriminate against it because it is a religious corporation. Rather, the record shows that the application was properly denied pursuant to the general police power of the village to safeguard the safety and tranquility of its citizens by requiring adequate off-street parking and provide for the safety of petitioner's own congregants and other possible future users of the building by requiring an adequate number of exits from the proposed sanctuary. Latham, Acting P. J., Cohalan, Christ, Brennan and Munder, JJ., concur.