Jack Stanislaw, J.
Petitioner conducts a branch bank in the County of Queens and brings this special proceeding, pursuant to section 881 of the Real Property Actions and Proceedings Law, for a license to enter respondent’s premises for five days during a one-month period, in order to make certain repairs to the rear wall of its premises. The wall is immediately adjacent to the parking lot of respondent’s shopping center. The statute, enacted in 1968, provides: ‘ ‘ When an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner or lessee without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter pursuant to article four of the civil practice law and rules. The petition and affidavits, if any, shall state the facts making such entry necessary and the date or dates on which entry is sought. Such license shall be granted by the court in an appropriate case upon such terms as justice *1093 requires. The licensee shall be liable to the adjoining owner or his lessee for actual damages occurring as a result of the entry.”
Petitioner alleges: (1) that its interior wall has become damaged by moisture seeping through from the exterior; (2) that to correct said condition it is necessary to waterproof and repoint the exterior brickwork of said wall; (3) that the work can only be accomplished by erecting a scaffolding on respondent’s premises which will occupy an area of approximately 54 square feet; (4) that the work can be completed in approximately five days of dry weather; (5) that respondent has refused petitioner’s request for permission to enter its premises to do the work; and (6) that to be assured of five consecutive dry days to accomplish the work, it is necessary that the license to enter respondent’s premises be granted for a 30-day period.
Respondent cross-moves to dismiss the petition on the grounds that: (1) it fails to state facts sufficient to constitute a cause of action; and (2) section 881 of the Real Property Actions and Proceedings Law is unconstitutional. Respondent claims the statute violates the due process clause of the State and Federal Constitutions; it0is a taking of private property for a private use; it is class legislation; it' impairs the obligations of contracts; it is not related to public safety, health, welfare and morals; it is unreasonable and oppressive, confiscatory, vague, indefinite, unreasonable, arbitrary and capricious and does not accomplish a legitimate public purpose; it denies respondent the equal protection of the law; it is an improper delegation of legislative authority without proper standards or guidelines; and that it unjustly interferes with private property and private contractual rights.
The only affidavit submitted in respondent’s behalf is made by its attorney, who states he is “ personally familiar with all the facts of this case.” Although approximately 12 of its 14 pages are devoted to legal argument attacking the validity of the statute, it also opposes the petition on the merits, alleging: (a) that respondent’s premises is a shopping center consisting of a supermarket, six other stores and a parking lot; (b) that the stores and supermarket are rented to respondent’s tenants; (c) that under the leases, respondent is required to furnish parking area for customers of its tenants; and (d) that the parking area is used every day of the week and is a necessary part of the shopping center.
Since the cross motion questions the constitutionality of a State statute, upon application of petitioner, the Attorney- *1094 General of the State of New York has intervened, pursuant to CPLR 1012, and furnished the court with a comprehensive memorandum of law supporting the validity of the disputed section.
We find no reported case involving the construction of section 881, but observing the trend of our statutory and case law dealing with comparable issues and after full consideration of the legal arguments advanced by each of the parties, it is our conclusion that the section is valid and that the petition is legally sufficient.
As expressed by the Law Revision Commission (N. Y. Legis. Doc., 1966, No. 65[B], p. [20]), the statute is in accord with the modern concept of permissible police power, particularly in large cities, where failure or inability to repair existing structures encourages urban blight. In support of its conclusion that the statute is a legitimate delegation of legislative authority, the commission refers to section C26-384.0 of the Administrative Code of the City of New York. That section provides, in part: “ Any person causing an excavation to be made shall be afforded the license necessary to enter the adjoining premises [for purposes of shoring up to prevent caving before permanent supports are provided]. If such license is not afforded, the owner of the adjoining premises shall have the responsibility of providing temporary and permanent support of his premises at his own expense, and for that purpose such owner shall be afforded the license necessary to enter the premises where such excavation is to be made.” (Emphasis supplied.) A similar license is permitted under sections C26-385.0 and C26-561.0 of the Administrative Code. Thus, statutory authority to enter adjacent property is not unique to the section here in dispute.
The commission further refers to the doctrine of ‘ ‘ private necessity ” adopted in numerous jurisdictions, authorizing entry upon private premises in cases of necessity. That doctrine is defined by the American Law Institute, Restatement of Torts in section 197 (1934), as follows: “ One is privileged-to enter land other than a dwelling house in the possession of another, at reasonable times and in a reasonable manner, for the purpose of protecting * * * land or chattels from destruction or serious harm, if such conduct is necessary or reasonably appears to the actor to be necessary * * * [provided that] where the entry is for the benefit of the actor, he is subject to liability for any harm done in the exercise of the privilege ”.
Not only does the subject enactment afford equal opportunity for all owners of real estate to enter their neighbors’ premises, when necessary and under reasonable circumstances, to pre *1095 serve their own property interests, but it provides for full compensation in the event of damage to their neighbors’ property. Moreover, the statute is entirely compatible with the general body of real property law enunciated by the courts of this State over the past century. For example, in Trustees of Columbia Coll. v. Thacher (87 N. Y. 311, 317) the court refused to enforce a restrictive covenant affecting real estate owned by plaintiff and defendant on the ground “ enforcement would impose great hardship upon [defendant], and cause little or no benefit to the plaintiff.” In Forstmann v. Joray Holding Co. (244 N. Y. 22, 29-30), the court refused to grant a mandatory injunction to enforce a right affecting plaintiff’s real property, stating: “ An injunction will be withheld as oppressive when it appears that the injury is not serious or substantial and that to restrain the acts complained of would subject the other party to great inconvenience and loss.”
And as stated in McCann v. Chasm Power Co. (211 N. Y. 301, 304-305) “When one without. right attempts to appropriate the real property of another by acts or results which will create an easement or ripen into a permanent right, a court of equity will compel the trespasser to undo as far as possible what he has wrongfully done. This rule, however, is not rigid. There are many authorities declaring and applying exceptions to it * * * The ownership of property will be protected unless there are other considerations which forbid, as inequitable, the remedy of the prohibitive or mandatory injunction. A court of equity can never be justified in making an inequitable decree. If the protection of a legal right even would do a plaintiff but comparatively little good and would produce great public or private hardship, equity will withhold its discreet and beneficent hand and remit the plaintiff to his legal rights and remedies.” (Emphasis supplied.)
The same equitable doctrines may be relied upon in establishing adequate guidelines for the court in the application of the statute here in dispute. The statute does not direct the court to grant a license to every applicant. On the contrary, it may be granted only “ in an appropriate case ”. In accordance with the foregoing principles of law, it should be granted only when necessary, under reasonable conditions, and where the inconvenience to the adjacent property owner is relatively slight compared to the hardship of his neighbor if the license is refused. Moreover, the statute affords the adjoining property owner adequate “ legal rights and remedies ” (Forstmann v. Joray Holding Co., supra), in that it subjects the licensee to full liability for ‘1 actual damages occurring as a result of the *1096 entry”. In effect, it is no more than a codification of the well-settled principles of jurisprudence expounded by the courts of this State and in other jurisdictions dealing with conflicting interests of adjacent property owners.
Respondent questions the legal interpretation of the term “ actual damages ” as employed in the statute. That issue is also no stranger to our courts. For example, see Griffin v. Colver (16 N. Y. 489); Schile v. Brokhahus (80 N. Y. 614); Hartshorn v. Chaddock (135 N. Y. 116); Lakeside Paper Co. v. State of New York (45 App. Div. 112). But the issue of damages as well as an enumeration of possible elements of damage is clearly premature at this time. It has not yet been demonstrated that respondent will sustain any ‘ ‘ actual damages ” capable of proof with a reasonable degrée of certainty (Griffin v. Colver, supra). It should also be noted that “ in cases of involuntary trespass the damages should be restricted as much as possible ” (De Camp v. Bullard, 159 N. Y. 450, 454). The legislative intent of the statute is to avoid litigation. It is anticipated that neighboring property owners. will be reasonable in dealing with each other and be able to come to terms without judicial intervention. But just as petitioner was required to seek the aid of court to obtain a license to enter respondent’s premises, respondent may be required to seek judicial assistance if the parties are unable to agree on damages.
As for respondent’s contention that the license should be denied because it interfered with its contractual obligations to its tenants, there is no indication, from the papers before us (which include neither copies nor extracts of the lease agreements) that respondent would be liable to its tenants in the event it should become necessary to utilize any portion of the parking lot for the purpose of making necessary repairs to its own property, including repairs or repaving at the very same area and utilizing the very same parking spaces involved on this application. Moreover, if respondent contends that any of its tenants has a contractual right to the parking lot space in question, such lessee may be added as a necessary party. Respondent, however, has not moved for such relief.
Since its affidavit is primarily confined to the legal objections raised on the cross motion, respondent may elect to serve a formal answer provided service is made within five days from the date of service of the order to be entered hereon with notice of entry, denying the cross motion (CPLR 404). Otherwise, said affidavit shall be deemed the answer herein, and the application shall be disposed of as follows.
*1097 Although the court is mindful of the resultant inconvenience to respondent and its tenants, it appears that such inconvenience 'will not be as substantial as petitioner’s hardship if the application is denied. Moreover, respondent’s inconvenience will be only temporary while petitioner’s hardship would be permanent. It is not denied that the repairs are necessary, that they cannot be made without entering respondent’s premises and that the work., will require five consecutive dry-weather days for completion. Respondent, in its memorandum of law, states that the space requested by petitioner, to perform the repair work, amounts to almost one half of its parking space area. Although respondent does not state the number of parking spaces involved, it would appear that an area of 54 square feet could affect only a few.
' Since the application meets the statutory prerequisite of necessity and neither the period of time requested nor the size of the area involved appears unreasonable, the petition should be granted. The license shall be for a period of 30 days, commencing on a date mutually agreeable between the parties ; otherwise, 10 days after the date of service of the judgment to be entered hereon with notice of entry. The work shall be performed during the first five dry-weather days of such period, utilizing approximately 54 square feet of respondent’s premises. The scaffolding shall be removed and the premises cleaned and vacated immediately upon completion of the work.
If respondent elects to serve a formal answer as hereinabove provided, it shall so advise petitioner, within five days after publication of this decision in the New York Law Journal. In that event, an order denying the cross motion shall be submitted on notice. If notice of respondent’s election to serve an answer to the petition is not made within said period, judgment granting the petition in accordance with the foregoing provisions shall be settled on notice.