Matter of Kasowitz, Benson, Torres & Friedman, LLP v PMorgan Chase Bank, N.A. (2024 NY Slip Op 05876)

Matter of Kasowitz, Benson, Torres & Friedman, LLP v JPMorgan Chase Bank, N.A.

2024 NY Slip Op 05876

Decided on November 26, 2024

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 26, 2024

No. 99 

[*1]In the Matter of Kasowitz, Benson, Torres & Friedman, LLP, Petitioner,
v
JPMorgan Chase Bank, N.A., Appellant, The Dakota, Inc., Respondent, Alphonse Fletcher, Jr., Respondent; Fletcher International, Ltd., et al., Intervenors-Respondents.

Alan E. Schoenfeld, for appellant. 
John Van Der Tuin, for respondent. 

RIVERA, J.

On this appeal, we must determine whether a lienholder nonparty to an action that resulted in a fee award against a debtor may challenge the legal basis of the judgment in a separate proceeding to recover those fees. We conclude that because the nonparty was neither joined nor required to intervene in the action against the debtor, it had no prior opportunity to challenge the award and thus is not barred from doing so in this proceeding. Therefore, we reverse the contrary order of the Appellate Division and remit to that Court for further proceedings.
[*2]I.
In 2001, Alphonse Fletcher, Jr. acquired certain property associated with two apartment units in a residential cooperative corporation, controlled by The Dakota, Inc. ("The Dakota"). The Dakota holds a perfected lien against that property. In 2008, JP Morgan Chase Bank, N.A. ("Chase") approved a multimillion-dollar loan to Fletcher, which he secured by immediately assigning to Chase his rights, title, and interest in the property. Shortly thereafter, Fletcher, Chase, and The Dakota entered into an agreement whereby Chase recognized The Dakota's priority to the proceeds of any sale or subletting of Fletcher's apartments ("the Agreement").
In 2011, Fletcher sued The Dakota for, among other things, alleged racial discrimination ("the Fletcher action"). The Dakota counterclaimed for legal fees and costs, invoking Article II, Paragraph Fifteenth of Fletcher's proprietary lease, which provides:
"If the Lessee shall at any time be in default hereunder, and the Lessor shall take any action against the Lessee based upon such default, or if the Lessor shall defend any action or proceeding (or claim therein) commenced by the Lessee, the Lessee will reimburse the Lessor for all expenses (including but not limited to attorneys fees and disbursements) thereby incurred by the Lessor, so far as the same are reasonable in amount, and the Lessor shall have the right to collect the same as additional rent or damages."
Supreme Court granted summary judgment to The Dakota in the Fletcher action. Thereafter, Supreme Court concluded that Paragraph Fifteenth authorized the award of attorneys' fees and costs and entered judgment for The Dakota on its counterclaim.
While the Fletcher action was pending, and before Supreme Court issued its fee award on The Dakota's counterclaim against Fletcher's former law firm, petitioner Kasowitz, Benson, Torres & Friedman, LLP ("Kasowitz"), commenced this CPLR 5225 proceeding against Chase, The Dakota and Fletcher that is the subject of this appeal. Kasowitz sought the seizure and sale of Fletcher's apartments to satisfy a judgment against Fletcher for unpaid legal fees. The Dakota answered, claiming, first, that it held an interest in Fletcher's property arising from the fee judgment in the Fletcher action and, second, that this interest was superior to that held by Chase. Chase countered that The Dakota did not hold a superior lien because Paragraph Fifteenth authorized attorneys' fees only in actions against The Dakota initiated by lessees in default and Fletcher was not in default when he sued The Dakota. In the alternative, Chase argued that if Paragraph Fifteenth were to apply to actions initiated by lessees not in default, the provision would be unconscionable.
In 2021, Supreme Court granted summary judgment to The Dakota, concluding that Paragraph Fifteenth "clearly and unambiguously" allowed The Dakota to recover attorneys' fees from Fletcher. The Appellate Division affirmed (209 AD3d 529 [1st Dept 2022]). The Appellate Division concluded, in relevant part, that Chase's contentions amounted to an "impermissible collateral attack on the Dakota's judgment" in the Fletcher action (id. at 530-531). The Court further stated that "[i]f Chase wants to vacate the Dakota's judgment, it must move before 'the court which rendered the judgment' " (id. at 530, quoting CPLR 5015 [a]).
Chase simultaneously moved for leave to appeal to this Court and, in the Fletcher action before Supreme Court, to intervene and vacate the judgment. Chase explained in its motion for leave that it was pursuing this course to protect its rights if we were to deny leave. We granted Chase leave to appeal (39 NY3d 916 [2023]).[FN1] As for the Fletcher action, The Dakota opposed Chase's motion, arguing, in part, that Chase failed to satisfy the requirements of CPLR 5015 (a) and that the motion was untimely. Before we granted leave, Supreme Court denied Chase's motion in its entirety. The court concluded that given the Appellate Division's decision, it would be unfair to find that Chase waited too long after entry of judgment to file for relief, but that Chase's argument that the dispute fell outside Paragraph Fifteenth lacked merit.[FN2]
[*3]II.
As a threshold matter, we reject The Dakota's argument that this appeal is moot because Chase already had "its day in court." According to The Dakota, Chase seeks a third bite at the apple because in two separate actions—on the motion to vacate and intervene in the Fletcher action and in the Kasowitz action here—Supreme Court considered the merits of Chase's arguments that Paragraph Fifteenth did not authorize The Dakota to obtain attorneys' fees. The Dakota misunderstands the law and ignores that Chase seeks—and has not yet received—an unencumbered Appellate Division review of its challenge in this proceeding, and that a decision from our Court rejecting a collateral bar would allow for such review.
An appeal is not moot if "the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment" (Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]). To vacate the judgment in the Fletcher action, Chase must establish one of the statutory grounds enumerated in CPLR 5015 (a).[FN3] Following the Appellate Division's collateral estoppel holding in the matter on appeal here, Supreme Court in the Fletcher action looked past these requirements to reach the merits of Chase's contractual arguments. However, on appeal, the Appellate Division may decline to do the same; it may conclude that Chase failed to satisfy the narrow grounds under CPLR 5015 for vacating a judgment, thus barring appellate review of Supreme Court's merits determination. A decision from us that Chase was not estopped from challenging the fee award and a remittal of the matter to the Appellate Division would provide a clear path to a merits appellate review and obviate any need for Chase to pursue its pending appeal of the CPLR 5015 (a) motion.[FN4] Thus, our disposition of this appeal would have an immediate, legally significant effect upon the parties' rights, which means this appeal is not moot.
[*4]III.
Turning to the central issue in this appeal, The Dakota contends that Chase is collaterally estopped from contesting that Paragraph Fifteenth authorized the fee judgment because: (1) as a secured lender, Chase had a continuing shared and common interest with Fletcher in the shares and lease that secured its loan; (2) when Chase made its loan, Chase recognized The Dakota's senior interest regarding the shares and lease; and (3) Chase had notice of the attorneys' fees due and of the priority of The Dakota's claim. We conclude that Chase is not barred in this matter from challenging the applicability of Paragraph Fifteenth and its liability for the fee awarded by Supreme Court in the Fletcher action.
Estoppel of an assignee turns on the particular interest they assigned because an assignee cannot transfer a greater interest than they hold (see Postal Tel. Cable Co. v City of Newport, Ky., 247 US 464, 474-475 [1918] ["The ground upon which, and upon which alone, a judgment against a prior owner is held conclusive against (their) successor in interest, is that the estoppel runs with the property, that the grantor can transfer no better right or title than (they have), and that the grantee takes cum onere"]). As this Court held in Gramatan Home Invs. Corp. v Lopez, for an assignee to be bound by the actions of an assignor, "privity must have arisen after the event out of which the estoppel arises" (46 NY2d 481, 486 [1979] [emphasis added]). "Conversely, an assignee is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against the assignor" (id. at 487 [emphasis added]). "Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate" (Buechel v Bain, 97 NY2d 295, 305 [2001]). It is undisputed that Fletcher assigned Chase an interest in his property in 2008 and that Fletcher initiated his action against The Dakota in 2011. The subsequent judgment in that action could not have defined the prior interest that Fletcher assigned to Chase. If the fee award dispute had arisen prior to Fletcher's assignment of his interests to Chase, then Chase might well have "taken" that interest subject to The Dakota's claim because Fletcher would have assigned his interest as so burdened. But that is not the case here.
The Dakota's reliance on the 2008 Agreement among Fletcher, Chase and The Dakota is misplaced because the Agreement created a separate line of contractual privity among the three regarding The Dakota's superior creditor status.[FN5] The Agreement binds Chase to an inferior creditor status as against The Dakota but does not prohibit Chase from challenging in the first instance The Dakota's entitlement under the lease provision to a post-assignment fee award incident to the property. Thus, the Appellate Division erred in concluding that Chase's current challenge to the enforcement of The Dakota's fee judgment in the Fletcher action amounted to an impermissible collateral attack.
IV.
To the extent that the Appellate Division suggested that Chase was required to intervene in the Fletcher action to protect its interests, we disagree. Such requirement is inconsistent with New York's Civil Practice Law and Rules and with federal due-process principles.
The CPLR generally treats joinder as mandatory, but intervention as permissive. Section 1001 (a) of the CPLR requires joinder of persons "who might be inequitably affected by a judgment in the action." Section 1012 permits—but does not require—persons who "may be bound by the judgment" to intervene as of right, provided, that they timely move to do so. Accordingly, other New York appellate courts have not treated intervention as a requirement for a nonparty to avoid collateral estoppel.[FN6] That approach comports with the CPLR. Indeed, under this framework, The Dakota could have joined Chase as a party to the Fletcher action. It chose not to do so at its peril.
Moreover, requiring intervention here would violate Chase's due process rights. The Dakota maintains that Chase had notice of the Fletcher action. However, notice alone is insufficient to preclude nonparty Chase from contesting The Dakota fee judgment in a separate proceeding. The United States Supreme Court has explained:
"A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and [their] representative are aligned; and (2) either the party understood [themselves] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented" (Taylor v Sturgell, 553 US 880, 900 [2008]).
To conclude that Chase essentially waived its challenge to the judgment in the Fletcher action by failing to intervene timely would treat Fletcher as Chase's representative in that proceeding. However, Fletcher's and Chase's respective interests were not aligned because Fletcher had no interest in whether Chase or The Dakota bore the cost of the judgment, or which among them had superior creditor status in an action to recover the fees. Indeed, Fletcher represented to Supreme Court in this litigation that he no longer has a legal interest in this proceeding. Nor is there any indication that Fletcher understood himself to be acting in a representative capacity for Chase or that that Supreme Court "took care" to protect Chase's interest (id. at 900). Fletcher therefore could not bind Chase as its representative in his action against The Dakota.[FN7]
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division for further proceedings in accordance with this opinion.
Order reversed, with costs, and matter remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein. Opinion by Judge Rivera.
Chief Judge Wilson and Judges Singas, Cannataro, Troutman, Halligan and Ceresia concur.
Judge Garcia took no part.
Decided November 26, 2024

Footnotes

Footnote 1: We subsequently denied The Dakota's motion to dismiss the appeal as moot (41 NY3d 1011 [2023]).

Footnote 2: Chase's appeal in the Fletcher action has been stayed pending our decision here.

Footnote 3: CPLR 5015 (a) provides:"The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:

"1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry; or
"2. newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under section 4404; or

"3. fraud, misrepresentation, or other misconduct of an adverse party; or

 
"4. lack of jurisdiction to render the judgment or order; or
"5. reversal, modification or vacatur of a prior judgment or order upon which it is based."

Footnote 4: Chase represents that the separate appeals are "an accident of timing" and that, if it succeeds before this Court, it will seek to consolidate the appeals below and rely solely on the remand here to resolve the merits.

Footnote 5: The Dakota also asserts superior creditor status under UCC § 9-322 (h) (1).

Footnote 6: See e.g., Gentlecare Ambulatory Anesthesia Services v MVAIC, 64 Misc 3d 130(A), *2 (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019); J.K.M. Med. Care, P.C. v Ameriprise Ins. Co., 54 Misc 3d 54, 56 (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016); Ideal Med. Supply v Mercury Cas. Ins. Co., 39 Misc 3d 15, 16 (App Term, 1st Dept 2013); Smooth Dental, P.L.L.C. v Preferred Mut. Ins. Co., 37 Misc 3d 67, 68 (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012); Mid-Atl. Med., P.C. v Victoria Select Ins. Co., 20 Misc 3d 143(A),*2 (App Term, 2d & 11th Jud Dists 2008).

Footnote 7: Lower court cases suggesting that mere unity of interest between a party and a nonparty in one action suffices to bind the nonparty in a subsequent action are inconsistent with Taylor and, to that extent, should not be followed (see e.g. Altegra Credit Co. v Tin Chu, 29 AD3d 718, 720 [2d Dept 2006]).